IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cr-30050-SMY |
| | ) |
| DAN R. WAECKERLE JR., | ) |
| | ) |
| Defendant. | ) |

# ORDER

**YANDLE, District Judge:**

On January 19, 2024, following a four-day trial, a jury returned a guilty verdict against Defendant Dan R. Waeckerle for soliciting an obscene visual depiction of a minor in violation of 18 U.S.C. § 2252A(a)(3)(B)(i) and (b)(1) (Count 1)); transferring obscene matter to a minor in violation of 18 U.S.C. § 1470 (Count 2); sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e) (Count 3); and offense by a registered sex offender in violation of 18 U.S.C. § 2260A (Count 4). This matter is now before the Court on Waeckerle's Motion for Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, Motion for a New Trial (Doc. 99). The Government has not filed a response. For the following reasons, the Motion is **DENIED**.

## Background

Waeckerle was charged in a 4-count superseding indictment on November 12, 2023 (Doc. 55). He pleaded not guilty to all charges. Before trial, defense counsel filed a notice of intent to admit evidence pursuant to Federal Rule of Evidence 412 (Doc. 72). The Court denied the motion, concluding that evidence of the minor victim's past sexual behavior was barred by Rule 412, irrelevant, and more prejudicial than probative (Doc. 81).

The evidence presented at trial included the following: In July 2021, Waeckerle communicated via text message using his cell phone with Li[1], who was 15 years old at the time. Waeckerle was a friend of Li's mother, Rita. The communications between Waeckerle and Li included sexually explicit topics. Included in the text messages were Waeckerle's requests for images of Li's genitals and a photograph of Waeckerle's penis. Li testified that she complied with Waeckerle's request for photographs and sent videos of her genitals. Waeckerle and Li made plans to meet to engage in sexual acts, however Waeckerle changed his mind about meeting with Li. Li informed her parents about the communications and police were contacted on July 28, 2021.

In August 2021, law enforcement conducted separate interviews with Li and Waeckerle. Waeckerle was interviewed by Investigator Adam Krack. During Waeckerle's interview, which was played for the jury, he admitted that he sent Li an image of a penis, while denying it was a photograph of himself, and admitted to asking Li for videos, but not of anything specific. He also admitted to sending her a photograph of a sex toy and acknowledged that Li had sent him nude images and a video, which he deleted. Waeckerle's cell phone was seized and he provided investigators with his passcode. The jury heard evidence through a stipulation that before July 2021, Waeckerle was convicted in state court of aggravated criminal sexual abuse and was required to register as a sex offender at the time of the charged offenses.

Li's mother testified about her interactions with Waeckerle. During her cross-examination, defense counsel attempted to elicit testimony regarding Li's past sexual history:

> Q. Miss Letterly, I believe you said before April 2021 you were checking your daughter's phone oftentimes; is that right?
> A. Yes.
> Q. And is that because of some concerning conduct that she had taken part in, that you were checking her phone?

---

[1] During trial, the parties referred to the minor as Li to protect her privacy.

(Doc. 106, pp. 36-38). The Government objected and the Court sustained the objection, noting that any evidence of or insinuation of Li's prior behavior could not come into evidence. *Id.*

Li testified about the images and videos she sent to Waeckerle, about images she received from Waeckerle, and about their relationship. During cross-examination, she admitted to initiating the sex talk and suggesting the sexual pictures and videos taken (Doc. 107, p. 40). Li also testified that she lied to her parents about the relationship:

> Q. Okay. And then you initially told your parents that Dan pressured you to send videos; is that right?
> A. Yes.
> Q. And that was a lie. He didn't pressure you to send videos, did he?
> A. He asked for them.
> Q. But he didn't pressure you, did he?
> A. I don't think so.
> Q. So, you lied to your parents; right?
> A. Yes.
> Q. Okay. And you had lied to your parents when you had -- when you promised them you weren't going to talk to him anymore, you lied to them again; right?
> A. Yeah.

(Doc. 107, pp. 41-43). Again, defense counsel attempted to elicit testimony regarding Li's past sexual history, but was admonished by the Court:

> Q. (BY MR. JUENGEL) And the reason you wanted to use Discord is because you knew that that couldn't be tracked; is that right?
> A. Yes.
> Q. Okay. You knew that you wouldn't have to delete messages; right?
> A. Yes.
> Q. Okay. And you were the one that knew about that app, not Dan; right?
> THE COURT: Excuse me. Sidebar, please.
> MR. JUENGEL: Or -- I'll just withdraw.
> THE COURT: Sidebar --
> MR. JUENGEL: Okay.
> THE COURT: This is the game we're not playing.
> MR. JUENGEL: I --
> THE COURT: You're not going to ask – knowingly ask improper questions and withdraw it. That's not what we do, Mr. Juengel. Sidebar.
> (Proceedings continued at the bench, outside the hearing of the jury.)
> THE COURT: Okay. Can you hear me, counsel?

> MR. JUENGEL: Yes, Your Honor.
> MS. BURNS: Yes, I can.
> THE COURT: Mr. Juengel, hopefully, this is the last time I'm going to have to do this. Yesterday, you mentioned that since you hadn't been in trial with me, you thought you would dip your toe in and see how far you could go. I suggested to you at that time that that was probably not a good plan. I have cautioned you not to run afoul of my rulings through the back door, the front door, or a side door. This question -- questioning this witness about Discord, which is not relevant in this case, and what she has done with Discord and what she knew, is clearly an attempt by you to circumvent my rulings and talk about her past sexual behavior. Not only will I not allow it, but I'm not sure you want to subject yourself to sanctions for this. And it is not enough or not appropriate for you to ask an annoyingly improper question, a question that violates my rulings, and withdraw it. That is not a game that we're going to play. So, you have been warned, sir. Let's move on.

(Doc. 107, pp. 47-48).

The Government presented evidence about the process of extracting the test messages from Waeckerle's cell phone. Senior Special Agent Nicky Harnice of the United States Secret Service testified that he regularly used software called Cellebrite to extract data from cellphones. Harnice used the software on Waeckerle's phone seized in connection with this case. Harnice then provided the Cellebrite report to Krack, who reviewed it. Krack also regularly used Cellebrite to extract data from cellphones. Krack was questioned about the contents of the Cellebrite report. Krack testified that 880 deleted text messages were recovered and identified, over defense counsel's objection, the time each message was sent and received. Although no actual images or videos were recovered from Waeckerle's cell phone, the text messages documented that he and Li had exchanged photographs and videos. Waeckerle would request a video or image, Li would then send an image or an .mp4 video minutes after Waeckerle's request.

The jury began deliberating mid-morning on the third day of trial and deliberated until mid-afternoon. At the end of the day, the jury had not reached a verdict. Juror 10 informed the Court that she had a previously scheduled funeral to attend the following day and could not miss it. Over Waeckerle's objection, Juror 10 was excused and replaced by Alternate Juror 1. The jury

commenced deliberations on the fourth day of trial and reached a verdict finding Waeckerle guilty on all counts.

## Motion for Judgment of Acquittal

A defendant may challenge the evidence presented at trial as "insufficient to sustain a conviction" under Federal Rule of Criminal Procedure 29. Fed. R. Crim. P. 29(a); *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017). When applying Rule 29, the Court must determine whether, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Filer*, 56 F.4th 421, 425 (7th Cir. 2022).

Waeckerle challenges the sufficiency of the evidence supporting the jury's findings that he was guilty of the charged crimes asserting that two of the counts, soliciting obscene material from a minor and transferring obscene matter to a minor, required the jury to assess whether the images or videos alleged to have been sent and received by Waeckerle were obscene. He argues that because there were no images or videos for the jury to assess, the jury was left with only Li's testimony regarding what the images and videos portrayed. Waeckerle also questions Li's credibility.

To establish that Waeckerle committed the offense of soliciting an obscene visual depiction of a minor (Count 1), the Government was required to prove the following elements beyond a reasonable doubt: (1) Waeckerle knowingly solicited material; (2) the solicitation reflected Waeckerle's belief that the material is a visual depiction of a minor engaging in sexually explicit conduct; and (3) Waeckerle used a facility in interstate commerce, including a computer, when he solicited the material. *See* 18 U.S.C. § 2252A(a)(3)(B)(i).

To establish that Waeckerle committed the offense of transfer of obscene material to a minor (Count 2), the Government was required to prove that (1) Waeckerle knowingly transferred an image of a penis; (2) he transferred an image of a penis to an individual less than sixteen years old; (3) Waeckerle knew at the time of the transfer the content, character and nature of the material; (4) the image of a penis is obscene; and (5) Waeckerle knowingly used any means or facility of interstate commerce to transfer the image of a penis. *See* Seventh Circuit Pattern Criminal Jury Instruction, 18 U.S.C. § 1470.

The crime of sexual exploitation of a minor (Count 3) focused on Waeckerle's behavior to target a minor victim to engage in sexually explicit conduct and required the Government to prove beyond a reasonable doubt that: (1) at the time, the minor victim was under the age of 18 years; (2) Waeckerle, for the purpose of producing a visual depiction of such conduct, employed, used, persuaded, induced, and coerced the minor victim to take part in sexually explicit conduct; and (3) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce, including by computer.  To establish Waeckerle attempted the charged crime in Count 3, the Government needed to prove that he took a substantial step toward committing the crime of sexual exploitation of a minor with the specific intent to commit that offense. *See* Seventh Circuit Pattern Criminal Jury Instruction, 18 U.S.C. § 2251(a).

The crime of offense by a registered sex offender (Count 4) required the Government to prove that Waeckerle was required to register as a sex offender and committed a felony offense involving a minor under 18 U.S.C. §§ 1470 and 2251(a) and (e).

Waeckerle's contention that the evidence was insufficient to convict does not merit much discussion.  The record reflects that the Government presented more than enough evidence to establish his guilt on each of the charged offenses beyond a reasonable doubt.  Evidence

established that Waeckerle communicated with Li via text messages. The text messages, which were obtained from Waeckerle's cell phone, described in graphic detail the sexually explicit interactions between Waeckerle and the minor. In addition to the text messages, Waeckerle's recorded statement was presented at trial in which he admitted to sending an image of a penis to Li and receiving multiple videos and images from her. Waeckerle also admitted to requesting a video of Li masturbating with a hairbrush. The fact that the images and videos were not provided to the jury is of no import. Based on the context of the text message conversations, Waeckerle's admissions, and the testimony provided by Li, the jury had sufficient evidence to render its verdict.

Waeckerle also questions Li's credibility, asserting that she previously lied to her parents about her contact with him, made inconsistent statements during trial, and had a motive to lie about the contents of the videos sent and received because she was upset that Waeckerle refused to meet her in person. However, it is the exclusive function of the jury to determine the credibility of witnesses and to determine what conclusions should be drawn from evidence admitted at trial. *See United States v. Godinez*, 7 F.4th 628, 638-39 (7th Cir. 2021); *United States v. Gonzalez*, 737 F.3d 1163, 1168 (7th Cir. 2013). Here, the evidence was more than sufficient for a jury to conclude that Waeckerle engaged in the conduct as charged, including the detailed text message chains and his admission to law enforcement. Based on the admitted evidence, a rational jury could find Waeckerle guilty beyond a reasonable doubt on each of the charged offenses. Accordingly, the motion for judgment of acquittal is denied.

**Motion for New Trial**

Federal Rule of Criminal Procedure 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." The Rule is "reserved for only the most extreme cases," and courts approach such motions "with great caution and are wary of second-guessing the

determinations of both judge and jury." *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012).

Waeckerle argues that several of the Court's evidentiary rulings were erroneous. He first contends that the Court erred in prohibiting him from admitting evidence of Li's sexual history, including text messages where she discussed online relationships with other men and her prior history of sending, manufacturing, and receiving sexually explicit images. Federal Rule of Evidence 412(a) prohibits evidence offered to prove that a victim engaged in other sexual behavior or to prove a victim's sexual predisposition. Rule 412 aims to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." Fed.R.Evid. 412 advisory committee's note. Rule 412(b) offers certain limited exceptions: (A) to prove someone other than defendant was the source of physical evidence, (B) to prove consent or if offered by the prosecutor, and (C) where exclusion would violate defendant's constitutional rights. The exceptions to Rule 412 apply in "limited circumstances." *United Stats v. Courtright,* 632 F.3d 363 (7th Cir. 2011).

Here, the Court correctly denied Waeckerle's motion because the proffered evidence did not constitute physical evidence contemplated by Rule 412 and did not fall into any of the other exceptions to the Rule. Additionally, Li's past sexual behavior was not probative to the case and was clearly prejudicial. The Court finds no error in preventing Waeckerle from introducing evidence related to Li's past sexual history.

Next, Waeckerle asserts that the Court erred by instructing defense counsel during voir dire to stick to relevant topic areas and to not be repetitive. The Court has broad discretion over how to conduct voir dire, including the form and number of questions to be asked on voir dire. *United States v. Torres,* 191 F.3d 799, 810 (7th Cir.1999); *Gardner v. Barnett,* 199 F.3d 915, 920-21 (7th

Cir.1999) (no right to have particular question asked in voir dire). Waeckerle admits that his defense counsel attempted to ask repetitive questions already covered by the Court and the Government. It was well within the Court's discretion to limit his questions. Accordingly, this point is denied.

Waeckerle also argues that the Court violated his Sixth Amendment right to confront Rita Ledderly and Li by limiting his cross examination. Although "the Sixth Amendment guarantees defendant an opportunity for effective cross-examination ... there is no guarantee of cross-examination to whatever extent the defense might wish." *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009). The court has broad discretion to impose reasonable limits on the extent and scope of cross-examination. *Id.* "Once a court permits a defendant to expose a witness's motivation, it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury." *Recendiz*, 557 F.3d at 530.

In this case, defense counsel was permitted to question the witnesses and, particularly, was able to elicit testimony regarding Li's credibility and motivations. Defense counsel established that Li initiated the conversation with Waeckerle, that she lied to her parents about their interactions, and that she potentially wanted to be in a relationship with him. The only limitation the Court placed on cross-examination were on inquiries outside of the relevant scope of the events giving rise to the charges and questions that ran afoul of previous Court rulings. These limitations on cross-examination did not deny Waeckerle the opportunity to establish his defense.

Next, Waeckerle asserts that the Court erred in allowing Investigator Krack to testify about his use of Cellebrite because he was not tendered as an expert. All witnesses may testify to facts within their personal knowledge. Experts offer opinions based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. Lay witnesses, in contrast, may only offer opinions

that are "rationally based on [their] perception," helpful to the jury, and not based on specialized knowledge. Fed. R. Evid. 701; *United States v. Chavez-Lopez*, 767 F. App'x 431, 434 (4th Cir. 2019) (lay witness may testify that a substance looks like blood but not that certain bruises indicate head trauma).

Krack testified that he regularly used Cellebrite to extract data from cellphones. He did not give expert testimony or offer an opinion, but merely explained to the jury what the numbers on the file meant:

> A. The file name for this one is 20210725_203445_001.mp4.
> Q. And in that file name, do you know what 20210725 indicates?
> A. It would be the date and time that the recording was started.
> Q. So, is that indicating that it was on July 25th of 2021 at 8:34:45, is when that video was recorded?
> …
> A. That's correct.
> Q. Okay. So, that would be July 25th, 2021, at 8:34 and 45 seconds?
> A. That's correct.

(Doc. 107, p. 219).

Krack's role as a witness was best characterized as testifying about facts in his personal knowledge. *See, e.g., United States v. Wehrle*, 985 F.3d 549 (7th Cir. 2021); *see also United States v. Chavez-Lopez*, 767 Fed. Appx. 431, 433 – 434 (4th Cir. 2019) (testifying to actions taken to extract data using Cellebrite did not qualify as expert testimony); *United States v. Marsh*, 568 Fed. Appx. 15, 16 – 17 (2nd Cir. 2014) (extracting data using Cellebrite and testifying to data found from extraction process did not constitute an opinion based upon the application of specialized knowledge to a particular set of facts). Accordingly, this point is denied.

Next, Waeckerle contends that the Court erred in excusing a juror after deliberations had started and replacing her with an alternate. Federal Rule of Criminal Procedure 24(c) allows the court to replace with alternatives any jurors who become or are found to be unable or disqualified

to perform their duties. Fed.R.Crim. 24. The decision to remove a juror is committed to the sound discretion of the court. *United States v. Doerr,* 886 F.2d 944, 970 (7th Cir. 1989). The Court's determination that Juror 10 should be excused to allow her to attend an important funeral was not erroneous.

Waeckerle also asserts that replacing Juror 10 was particularly erroneous because the alternate jurors were aware that he was in custody and shackled. The Court does not believe the alternate jurors saw Waeckerle shackled. Further, the constitutional implication is not whether the jurors knew or speculated that he was in custody, but the prejudice of the jury observing the defendant in visible shackles – which did not occur in this case. *See Deck v. Missouri*, 544 U.S. 622, 628 (2005). Waeckerle has not made any showing that he was prejudiced by the replacement of Juror 10.

Finally, Waeckerle contends that the Court erred in admitting the text messages which were hearsay and unauthenticated. Waeckerle does not develop any analysis to support his assertion and the Court is not required to consider undeveloped and unsupported arguments. *United States v. Hook,* 471 F.3d 766, 775 (7th Cir. 2006). That said, the text messages were not hearsay and were properly authenticated. *See United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016).

## Conclusion

For the foregoing reasons, Defendant Dan R. Waeckerle Jr.'s Motion for Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, Motion for New Trial (Doc. 99) is **DENIED** in its entirety.

    IT IS SO ORDERED.

    DATED: April 24, 2024

**STACI M. YANDLE**
**United States District Judge**